Darrin E. MORRIS; Eugene K. Adams, on behalf of themselves and all others similarly situated; Plaintiffs–Appellees,

v.

George VOINOVICH, et al., Defendants–Appellants.

No. 03–3051.

United States Court of Appeals, Sixth Circuit.

July 29, 2004.

Fay E. Stilz, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, Alphonse A. Gerhardstein, Laufman & Gerhardstein, Cincinnati, OH, for Plaintiffs–Appellees.

Stephen P. Carney, Office of the Attorney General of Ohio, Todd R. Marti, Asst. Atty. General, Office of the Attorney General, Corrections Litigation Section, Columbus, OH, Defendants–Appellants.

Before: SUHRHEINRICH, BATCHELDER, and COLE, Circuit Judges.

## OPINION

PER CURIAM.

Defendant–Appellant State of Ohio appeals the district court's order disbursing to certain Ohio prisoner-class members the remaining unassigned funds in a settlement fund. The settlement fund is governed by a settlement agreement in the litigation arising out of the April 1993 riot at Ohio's Southern Correctional Facility. The district court ordered these funds to be distributed on a pro rata basis based upon the size of the awards the prisoners had previously received from the fund. Because such distribution was beyond the district court's authority under the settlement agreement, we REVERSE the decision of the district court.

## I. BACKGROUND

The extensive background of this case has been described in full by previous panels of this court. *See In re Southern Ohio Correctional Facility ("SOCF I")*, 191 F.3d 453, 1999 WL 775830 (6th Cir. Sept.24, 1999) (unpublished); *In re Southern Ohio Correctional Facility ("SOCF II")*, 24 Fed. Appx. 520 (6th Cir.2001) (unpublished). In short, the state of Ohio and two classes of Ohio prisoners settled a class action relating to Ohio's handling of the April 1993 riot and subsequent lockdown at the Southern Ohio Correctional Facility ("SOCF"), a maximum security prison in Lucasville, Ohio. On January 22, 1997, the parties signed the "Class Action Memorandum of Understanding" ("Memorandum of Understanding"). The Memorandum of Understanding mandated various improvements and the creation of a $4.1 million settlement fund. It also provided procedures for administering and disbursing the fund, and the parties agreed to further procedures in a "General Protocol for Claims by Class Members Against Settlement Fund" ("General Protocol"). Together, these documents form the settlement agreement. *SOCF I*, 1999 WL 775830, at *1. Ohio law governs the settle-

ment agreement by express provision in the Memorandum of Understanding. *Id.* at *5.

Pursuant to the terms of the settlement agreement, a claims administrator processed the claims of the various inmates, which totaled over a thousand in number. Various of these claims were appealed first to the claims administrator himself, then to the magistrate judge, and thereafter to the district court following the procedures specified in the General Protocol. When the claim resolution process came to a close, $665,000 remained in the fund, of which $165,000 represented awards that had been refused, awards that were undeliverable, and awards to deceased beneficiaries. Plaintiffs requested that the magistrate judge order that the remaining unassigned funds in the settlement fund—$500,000—be distributed on a pro rata basis to the prisoners who had already received awards. Plaintiffs styled this request as an appeal of claims determinations. The magistrate judge denied plaintiffs' request, concluding that such a distribution was outside the settlement agreement. Plaintiffs appealed this decision to the district court, which ordered distribution of the funds on a pro rata basis. Defendants appeal that order.

## II. DISCUSSION

In *SOCF I*, this Court determined that the district court could only take action to enforce the terms of the settlement agreement because it no longer has jurisdiction to alter the settlement agreement because the agreement was not entered as a consent decree. *Id.* at *5 ("[U]nless the parties' compromise is entered as a consent decree, a district court cannot modify the terms of a proposed settlement without the consent of the parties."). Therefore the district court has authority only to enforce the terms of the settlement agreement over which it has retained jurisdiction. *Id.* at **6–7. The parties do not dispute that holding. Instead they disagree regarding whether the pro rata awards are a reasonable interpretation of the settlement agreement.

■ Plaintiffs first argue that the parties waived their right to appeal award decisions to this Court as part of the General Protocol. It is true that the General Protocol sets up an appeals process for *individual* awards of damages under which the district court is the final authority. ¶¶ 14–15. That is, an individual claimant or the Department of Corrections could pursue an appeal of an individual award decision by the claims administrator. Such an appeal would first be to the claims administrator himself. If unhappy with that decision, the claimant, class counsel, or the Department of Corrections could further appeal to the magistrate judge, and finally to the district court, whose decision would be final. *Id.* These provisions, by their terms, apply to appeals of individual claims adjudications—whether appealed by the claimant or the State. The order at issue in this appeal does not arise out of an individual claim adjudication, nor were the procedures contained in paragraphs 14–15 followed. Therefore, the current appeal is not an appeal of an individual award pursuant to paragraphs 14–15, and the district court's decision is not the final word under the terms of the settlement agreement.

■ The district court did not have authority to make a pro rata distribution of the remaining funds. The district court claimed to derive authority from two places in the settlement agreement. The first is its appellate role, authorized by paragraphs 14–15 of the General Protocol. The district court asserted that this section of the agreement gives the district court "ultimate authority to enforce the

settlement agreement." (Order at 7). However, paragraphs 14–15 describe the procedure for appealing individual award determinations. They do not provide any authority for making global adjustments to awards, and, in any case, the procedures of that appeals process have not been followed here. The district court did not have authority to make the pro rata distribution pursuant to paragraphs 14–15 of the General Protocol, nor was it acting pursuant to those provisions.

Second, the district court based its authority on the fact that it "granted permission to the Magistrate Judge to establish protocols by which claimants could submit claims for compensation" and the "[u]ltimate authority to administer the settlement fund ... has always remained with [the district court]." (Order at 8). No provision of the Memorandum of Understanding gives the district court any authority in administering the settlement funds, and the General Protocol only provided appellate authority over individual claims. It is irrelevant at this point that the district court gave permission to the parties to utilize a magistrate judge: the Memorandum of Understanding—as written—gives authority to the magistrate judge alone to supervise the establishment of protocols for processing individual claims. The district court retained no such authority.

Because the settlement agreement does not give the district court authority to adjust the awards, except as part of the appeals process described in the General Protocol, the district court cannot make a blanket adjustment of the awards. The order of the district court is therefore REVERSED.